IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **BRADLEY CARTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.            ) | CASE NO. 5:08-CV-1740-KOB |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

The claimant, Bradley Carter, filed applications for Disability Insurance Benefits and Supplemental Security Income Payments on January 31, 2006, alleging disability commencing on an amended onset date of October 1, 2005 because of lower back problems and kidney trouble. The Commissioner denied the claims.  The claimant filed a timely request for a hearing before and Administrative Law Judge (ALJ).  The ALJ held an original hearing on August 3, 2007 with a supplemental hearing on December 13, 2007.  In a decision dated January 24, 2008, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act, and therefore, was not eligible for Disability Insurance Benefits and Supplemental Security Income Payments.  On July16, 2008, the Appeals Council denied the claimant's request for review.  The claimant has exhausted his administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3).  For the reasons stated below, the decision of the

Commissioner will be REVERSED and REMANDED.

## II.  ISSUE PRESENTED

The claimant presents the following issue for review: whether the Residual Functional Capacity (RFC) assessment, upon which the ALJ relied, is incomplete and internally inconsistent; and therefore, fails to represent substantial evidentiary support for the ALJ's decision?

## III.  STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standard and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No ... presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Id.* at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirely to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but the court must also

view the record in its entirely and take account of evidence that detracts form the evidence relied on by the ALJ, *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV.  LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in an substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To make this determination, the Commissioner employs a five-step, sequential evaluation process:

>  (1)  Is the person presently employed?
>  (2)  Is the person's impairment severe?
>  (3)  Does the person's impairment meet of equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. I?
>  (4)  Is the person unable to perform his or her former occupation?
>  (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads wither to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520 and 416.920.

The Commissioner may reject any medical opinion if the evidence supports a contrary finding.  *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Good cause exists to discredit a treating doctor's opinion when it is conclusory, or inconsistent with the doctor's own medical records, or "not bolstered by the evidence, or where the evidence supported a contrary finding." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

## V. FACTS

The claimant was forty-two years old at the time of the administrative hearing decision and has a general equivalency diploma (GED). (R. 95, 134). His past work experience includes medium to heavy semiskilled to skilled work as a carpenter, construction worker, and truck driver. (R. 45-46).  The claimant originally alleged an onset date of August 12, 2005, but later amended the onset date to October 1, 2005. (R. 95, 110). According to the claimant, he became unable to work because of worsening back pain traveling into his buttock and left leg because of degenerative disk disease. (R. 36-38).  He is presently unemployed (R. 111).

*Physical Limitations*

In March 2002, the claimant visited Dr. Johnson complaining of back pain caused by an injury received at his job while lifting boxes of chicken. (R. 166). He received an MRI scan that showed a herniated disk at the level L5-S1 and a smaller disk bulge at L4-5. (R. 165). During the same month, plaintiff underwent microdiscectomy surgery at the level of L5-S1 performed by Dr. Johnson. (R. 162). In follow-up examinations, Dr. Johnson noted the claimant had a negative straight leg raising test and showed minimal weakness in the left extensor hallucis longus muscle (located in the lower leg). (R. 164). Dr. Johnson released the claimant to return to light duty work for the first week with lifting restrictions set at twenty pounds or below, and normal work duties thereafter. (R. 163).  The claimant had no other records reflecting back pain until January 13, 2005, when he visited the Huntsville Hospital emergency room because of back pain. (R. 167-76). At that time, a lumbar spine x-ray showed early degenerative changes, and the claimant was released. (R. 167-76).

Dr. Pennington and Dr. Cromeans, general practitioners,  treated the claimant between

2005 and 2007 and prescribed Lortab, Xanax, and Soma medications. (R. 241-54). Dr. Cromeans's records, from April through June 2006, indicated tenderness in the lumbar area and decreased range of motion in the lumbar spine. (R. 241-51). On October 16, 2006, claimant's MRI showed degenerative disc disease at multiple levels, most significantly at levels L4-5 and L5-S1, with possible nerve root encroachment at level L5, facet anthropy, and an increased signal at L4-5 consistent with annular tears. (R. 237-40). Also, an MRI of the left knee showed posterior horn meniscal tears. (R. 237-40). Claimant visited Central North Alabama Health Services several times between February 26, 2007 and June 5, 2007, complaining of lower back pain and/or left knee pain. His exams revealed a full range of motion and negative straight leg raising tests bilaterally, no bony deformities in the knee, and stable hypertension. (R. 255-62).

*The First ALJ Hearing*

At the first hearing on August 2, 2007, the claimant testified that he experienced pain from the bottom of his spine to his left butt cheek and down to his left leg. (R. 37). He also claimed that he experienced panic attacks. (R. 41). On a scale of one to ten, the claimant rated his pain as nine. *Id.* The claimant testified that his prescribed medications, Celebrex, Ultram, Lyrica, and Atenolol, did provide some relief. (R. 38). The claimant testified that he had worsening back pain after surgery and physical therapy. *Id.* Regarding the claimant's limitations, he testified that he could probably walk an eighth of a mile and stand for approximately five to ten minutes. (R. 39). He also testified that he could not sit for a long period of time before having to switch positions; when at home he usually lies down and flips from side to side or between his back and stomach. *Id.*

Regarding the claimant's daily living activities, the claimant testified that his mother did

the grocery shopping and that he could not do any laundry, vacuuming, or cooking, besides microwavable dinners. (R. 40). Regarding the claimant's side effects from medications, the claimant testified that Xanax caused memory loss and sleepiness, and Soma caused sleepiness. (R. 41-42). The claimant also testified that he had been addicted to pain medications in the past. *Id.* The claimant acknowledged that he had been charged with a DUI because he had taken too many drugs to relieve his pain. (R. 42). He also acknowledged that he had been arrested for shoplifting personal items such as razors, deodorant, and soap from Wal-Mart in 2006. (R. 43).

The ALJ questioned the claimant and the vocational expert (VE) about his work abilities. (R. 43-45). The claimant testified that he could not go back to any of his previous jobs because sitting would bother him, and he would be jumpy and jittery. (R. 44). He further testified that his pain would require him to be absent from work two to four times per month. (R. 44-45).

The ALJ posed four hypothetical situations to the VE. (R. 46-49). The ALJ based his first hypothetical on the restrictions listed for sedentary work, coupled with the claimant's age, education, and work experience. (R. 46). The VE stated that the claimant would be precluded from any past work, but that unskilled-sedentary work would be available. (R. 46, 47). The VE gave examples such as job sorter, table worker, and assembler, all of which exist in significant numbers in the national economy. (R. 47). Then, the ALJ asked a series of hypothetical questions based on the limitations alleged in the claimant's testimony. (R. 48-49). The VE ruled out all work if claimant's testimony were true about having to take more work breaks than normal and having to miss two or more days of work per month because of pain. (R. 48-49). In the ALJ's last hypothetical, the VE ruled out all work if the claimant's pain, discomfort, and side effects from medications affected his concentration, persistence, and pace for up to two hours at a time. (R.

49). Because of the ALJ's RFC finding and the claimant's age, education, work experience and VE's testimony, the ALJ determined that the claimant was not disabled because he could make a successful adjustment to other jobs existing in significant numbers in the national economy. (R. 22).

*Post-Hearing Consultative Exam*

After the first hearing, the ALJ referred the claimant to Dr. Eston Norwood, a consultative neurologist. (R. 53). Dr. Norwood noted the October 2006 MRI scan of the claimant's spine and knee. (R. 263). He also noted that the claimant walked slowly with an antalgic gait and had "voluntary guarding limited range of motion in the lower back," but had good range of motion in the neck and extremities, including the left leg and knee. (R. 263). Dr. Norwood accepted the claimant's reported limitations: "He reports increased back pain associated with sitting, standing, walking, lifting and carrying. I have filled out the Medical Source Opinion (Physical) to indicate his reported limitations." *Id.* Dr. Norwood determined "no objective neurologic deficit [exists], and [the claimant] does not have [a] physical neurologic impairment to do work-related activities including sitting, standing, walking, lifting, carrying, and handling objects." *Id.* Dr. Norwood completed a residual functional capacity (RFC) assessment questionnaire based on the claimant's subjective complaints. (R. 20, 263). His questionnaire assessed the frequency with which the claimant could perform certain activities. *Id.* For example, he concluded "that the claimant can occasionally stoop, kneel, crouch, and crawl; [and] that he can frequently push and pull with legs." *Id.* He also found that the claimant could "constantly push and pull with his arms, climb, balance, handle and finger objects, reach overhead, talk, [and] hear." *Id.* Lastly, Dr. Norwood noted that the claimant could "constantly be

7

around temperature extremes, wetness, humidity, vibrations, pulmonary irritants, moving machinery, unprotected heights; and operate automotive equipment." (R. 20, 265-67). However, the assessment questionnaire did not specifically assess the *frequency or length of time* the claimant could sit, stand, walk, lift, and carry objects. (R. 265-266).

*The Second ALJ Hearing*

At the second hearing on December 13, 2007, the ALJ questioned the claimant about his previous work history, Dr. Norwood's consultation, and his daily living activities. (R. 54-66). The claimant testified that he could not go back to his job as a carpenter because he did not have good balance and could not climb.

Regarding his consultation with Dr. Norwoord, the claimant testified that the exam lasted approximately five minutes during which Dr. Norwood pricked him with a bobby pin and asked him to do a heel walk. (R. 57). Dr. Norwood did not require the claimant to climb any stairs or do any balancing tricks. *Id.* The claimant also stated that he could not be around extremely cold or hot temperatures because the weather "locks [his] back up" and made him feel like he had arthritis in his back and knee. (R. 55-56). The claimant testified that he did not drive because of the warnings on his medications that caution against driving. (R. 57). He stated that he could only sit for about fifteen to twenty minutes before he has to walk or lie down. (R. 58). On a scale of one to ten, the claimant rated his pain as an eight or nine, but after medication maybe a five or six. (R. 60).

The ALJ asked the claimant about his daily living activities. (R. 62-64). The claimant stated that he could no longer hunt, fish, play basketball and baseball, or play with his daughter. (R. 61). The claimant testified that he could not walk around Wal-Mart completely because

standing on hard surfaces made his back tighten up in a big knot. (R. 62). He stated that his girlfriend did the grocery shopping, but he could go "in and out" of the Dollar General store to just get what he needs because he knows the layout of the store well. *Id.* The claimant said he could not vacuum, sweep, mow the yard, take out the trash, or bring in the groceries other than the eggs. (R. 63-64). The claimant reported that he could not take a bath and has trouble shaving and showering. (R. 64). Regarding the side effects of his medications, the claimant reported that the medications make him dizzy, drowsy, and sleepy. *Id.* He also stated that he had a hard time focusing, concentrating, and paying attention. (R. 64-65). The ALJ confirmed the VE's prior testimony, but did not ask the VE any additional questions. (R. 66-67).

*The ALJ's Decision*

On January 24, 2008, the ALJ issued a decision finding the claimant not disabled under the Social Security Act. (R. 23). The ALJ determined the claimant was not performing substantial gainful work. (R. 16). The ALJ noted the claimant had severe impairments including degenerative disc disease of the lumbar spine, which was status post microdiscectomy at the level of L5-S1 on the left, left knee pain, hypertension and anxiety. (R. 16). The ALJ determined that the claimant's impairments or combination of impairments did not meet any of the listed impairments in 20 C.F.R. pt. 404, subpart P, app. 1. (R. 17). The ALJ found the claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms the claimant testified to at the ALJ hearing, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 18).

As support for his credibility finding, the ALJ first looked to the claimant's previous

income statements. The ALJ decided that the claimant's work activity after the surgery in which he earned $8,179 in 2003, $22, 256 in 2004, and $6,991 in 2005 was inconsistent with the claimant's allegations that he had no improvement after surgery and that his back pain is worsening. (R. 19). Second, the ALJ noted that he believed the claimant's testimony about not being able to do any shopping was inconsistent because the claimant stated at the first hearing that his mother does the shopping, while at the second hearing he stated that his girlfriend does the shopping; and that he admitted to shoplifting for basic necessities in Wal-Mart. (R. 20-21). Third, the ALJ found that the claimant's testimony about the side effects of his medications were inconsistent, stating that the claimant said he had no side effects from pain medications, but that Xanax and Soma cause sleepiness and memory loss. (R. 21).

In assessing the claimant's residual functional capacity, the ALJ accorded greater weight to the opinion of Dr. Norwood, the consulting physician, because the claimant's treating physicians, Dr. Pennington and Dr. Norwood, general practitioners, gave no opinion regarding the claimant's abilities or limitations, but only provided handwritten notes of treatment for subjective complaints and very few clinical or objective findings. (R. 20).  Because of Dr. Norwood's examination and the inconsistencies listed above, the ALJ gave the claimant a residual functional capacity to perform work related activities at no more than the sedentary level. (*Id.*). The ALJ concluded that the claimant could not perform any past relevant work because of the following restrictions:

> the claimant should have a sit/stand option and should be required to sit or stand no greater than 30 minutes at a time; as a result of problems with his back and knee, he should not be required to climb ropes, ladders, or scaffolding; he should not work around dangerous heights or around dangerous unguarded moving machinery; he should do no commercial

>     diving; and from a psychological standpoint, he has no greater than a moderate restriction or limitation in activities of daily living and social functioning and in maintaining concentration, persistence and pace, and he should do no more than unskilled type work.

(R. 17, 21).

## VI. DISCUSSION

The claimant argues that substantial evidence does not support the ALJ's decision because it relies on an incomplete, internally inconsistent RFC assessment completed post-hearing by Dr. Eston Norwood, a one-time consulting neurologist. The claimant asserts that the RFC assessment is incomplete because it does not contain the customary assessment of certain exertional limitations such as the claimant's ability to sit, stand, walk and lift (nor does it specify how much or how frequently).

In light of these arguments, the court will examine Dr. Norwood's assessment to determine whether the ALJ properly relied upon it as support for his decision. Good cause exists to discredit a treating physician's opinion when it is inconsistent with the doctor's own medical records, "not bolstered by the evidence, or where the evidence support[s] a contrary finding." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Dr. Norwood was only a consulting physician, so if inconsistencies would provide good cause to discredit a more heavily weighted treating physician's opinion, they would also provide good cause for discrediting a consulting physician's opinion. Conversely, if inconsistencies in a doctor's report and supporting records provide good cause for discrediting that physician's opinion, such inconsistencies in a doctor's report would also render that report improper as *support* for an ALJ's opinion.

The court agrees that the RFC questionnaire omits the very activities that the claimant

asserts as limited: sitting, standing, walking, lifting, and carrying. Because these activities, including the duration and frequency that the claimant can perform them, are crucial to a true RFC assessment, the omission of such findings is glaring. If Dr. Norwood made the effort to evaluate whether the claimant can perform a specific activity, he should have also evaluated how much the claimant can lift, how many hours he can sit, how far he can walk, etc., and his failure to do so renders the assessment incomplete.

The Commissioner argues that Dr. Norwood's "Neurology Evaluation" contains an attachment that does mention the claimant's work related activities; and therefore, the assessment is complete. However, Dr. Norwood's evaluation does not provide a detailed, quantitative evaluation of the challenged activities, but only a general assessment.[1] In any event, the court agrees with the claimant that the evaluation language is inconsistent, or at least, confusing. On one hand, the evaluation lists the disputed activities and opines that the claimant does not have any neurological deficit, and that he is able to do work-related activities that include sitting, standing, walking, lifting, carrying, and handling objects. That opinion appears to support a finding of no limitation in those areas. On the other hand, Dr. Norwood's evaluation also implies that he intends to accept the claimant's reported limitations, stating that "I have filled out the Medical Source Opinion (Physical) to indicate his *reported* limitations." (R. 263) (emphasis added). Accordingly perhaps, Dr. Norwood intended his attached questionnaire to include those reported limitations and to assess them in a manner consistent with claimant's complaints of

---

[1] Claimant's testimony indicated that Dr. Norwood's examination was inadequate: he examined him only for five minutes and the examination included pricking him with a bobby pin and watching him perform a heel walk. According to claimant, Dr. Norwood did not ask him to climb stairs or do balancing activities as part of the assessment.

pain. The failure to address the work-related activities at all could be an inadvertent omission. Nevertheless, the fact remains that Dr. Norwood did not assess the claimant's limitations in a complete and meaningful way.

After the first hearing, the ALJ recognized that he needed a full assessment of the claimant's RFC and commendably attempted to obtain that assessment. However, Dr. Norwood's assessment did not provide what the ALJ requested. Whether that assessment – in its current form – is deemed to be incomplete, inconsistent, or both, it raises more questions than it answers and certainly omits crucial evaluations. The ALJ should have acknowledged the problems with Dr. Norwood's assessment and either refused to rely on it or sent it back to Dr. Norwood for completion and clarification. Instead, the ALJ ignored the problems with the assessment and improperly relied upon the evaluation. For example, the ALJ's statement that Dr. Norwood's evaluation "was completed *based on* the claimant's subjective complaints and reported limitations" is incorrect. (R. 20) (emphasis added). To the extent the ALJ interpreted the evaluation to mean Dr. Norwood found no impairment in the activities of sitting, walking, standing, lifting and carrying, the evaluation *contradicted* claimant's reported limitations. In any event, the ALJ's according of great weight to Dr. Norwood's opinion was error, and thus, substantial evidence does not support the ALJ's opinion.

Based on the record, this court concludes that the ALJ did not properly rely on the consulting physician's RFC evaluation and that substantial evidence does not support his decision.

### VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is

13

not supported by substantial evidence. Therefore, the court will REVERSE the Commissioner's decision and will REMAND it for the ALJ to determine whether the claimant is entitled to Supplemental Security Income Payments or Disability Insurance Benefits.

The court will enter a separate Order consistent with this opinion.

DONE and ORDERED this17th day of March 2010.

/s/ Karon O. Bowdre
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE